UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

LINDA YARBROUGH )
)
        PLAINTIFF )
)
v. )
)
TOYOTA MOTOR MANUFACTURING )
OF KENTUCKY, INC. )
Serve: CT Corporation System )
      306 W Main St., Suite 512 )
      Frankfort, KY 40601 )
)
        DEFENDANT )

**COMPLAINT**

\*\*\*\*\*\*\* \*\*\*\*\*\*\* \*\*\*\*\*\*\*

For his complaint herein, the Plaintiff states:

1. The Plaintiff resides in Clark County in the Commonwealth of Kentucky.

2. The Defendant, Toyota Motor Manufacturing of Kentucky, Inc. (hereinafter "TMMKl") owns and operates its business in the Commonwealth of Kentucky including but not limited to in Georgetown, Scott County, Kentucky.

3. The Defendant employed Plaintiff from August 2011 up until March 2018.

4. Plaintiff's work performed pursuant to his employment with Defendants was in Georgetown, Scott County, Kentucky and all the acts or practices complained of herein occurred within the Commonwealth of Kentucky. Venue is proper under 28 U.S.C. 1391.

5. This action arises out of Plaintiff's employment with Defendant and Defendant's violations of chapter 344 of the Kentucky Revised Statutes *et seq.* "Kentucky Civil Rights Act" (hereinafter "KCRA"), 42 U.S.C. 12101 *et seq.* "Americans with Disabilities Act," (hereinafter "ADA"), and chapter 29 of the

United States Code at section 2611 *et seq.* "Family and Medical Leave Act" (hereinafter "FMLA"). Jurisdiction is proper under 28 U.S.C. 1331 and 28 U.S.C. 1367.

## FACTS

6. At the times relevant hereto Defendant employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. At all times relevant hereto Defendant was an employer under the KCRA, ADA, and FMLA.

7. At the times relevant hereto Linda Yarbrough had been employed for at least 12 months by Defendant and for at least 1,250 hours of service with Defendant in the previous 12 month period.

8. At all times relevant hereto, Plaintiff Yarbrough is an otherwise qualified individual with a disability.

9. On or around March 2017 Plaintiff Yarbrough began requiring treatment for medical problems.

10. On or around June 2017 Linda Yarbrough took a leave of absence to receive treatment for the above-referenced disability and/or impairment(s), including but not limited to matters related to gastrointestinal problems.

11. On or around June 2017 Linda Yarbrough took a leave of absence to receive treatment for her own serious health condition, including but not limited to matters related to gastrointestinal problems.

12. The above-referenced leave of absence was approved by Defendant for "intermittent leave."

13. While Plaintiff Yarbrough was approved for intermittent medical leave she heard several co-workers and superiors discuss a perception on the doorline that too many employees/team members were on medical leave and there was an effort to remove individuals from the work force who were on intermittent medical leave.

14. At all times relevant hereto, Plaintiff Yarbrough's intermittent leave of absence had been approved and, as such, she only had to report an absence as being FMLA related for it to be considered excused.

15. For Plaintiff Yarbrough's absences related to her medical condition, she was required to report it by calling an automated phone number for TMMK (which was required regardless of whether the absence was related to medical leave), and to either call an automated phone number or visit a website for the third party administrator for the medical leave.

16. On January 16, 2018 Plaintiff Yarbrough missed work for reasons not related to medical leave. By mistake and as a matter of habit, Plaintiff Yarbrough reported this absence by the same procedure described above, including to the third party administrator.

17. In addition to the above-referenced procedure, Plaintiff was encouraged to complete a leave of absence form for TMMK for each absence regardless of whether it was related to medical leave.

18. On or around January 18, 2018, Linda Yarbrough met with her group leader who discussed general concerns about absenteeism and medical leave, and he specifically referred to another team member who had only used

medical leave three (3) times in the past year as a good example that she should follow.

19. During the above-referenced meeting Plaintiff Yarbrough's group leader provided her with a leave of absence form to complete for her January 16, 2018 absence.

20. Plaintiff Yarbrough questioned the use of the leave of absence form for her in this instance since it was generally under-utilized.

21. While completing the above-referenced form, Plaintiff Yarbrough realized for the first time that the January 16, 2018 absence had been mistakenly reported through the third party administrator for medical leave in addition to calling TMMK.

22. Plaintiff Yarbough's January 16, 2018 leave of absence was marked as "excused" by her group leader.

23. At all times relevant hereto, Linda Yarbrough was never disciplined and/or warned for excessive absenteeism.

24. Soon after the above-referenced correction for an absence occurred, for Linda Yarbrough to meet with her group leader and with human resources.

25. Plaintiff Yarbrough did in fact meet with her group leader and human resources and was told that they believed the January 16, 2018 absence would be investigated but they did not foresee a problem since she was honest.

26. After the above-referenced meeting, Plaintiff Yarbrough learned she was being processed for termination and was scheduled for a peer review meeting.

27. During the above-referenced peer review meeting, Plaintiff Yarbrough was questioned about the correction and her use of medical leave in general and told what the consequences were for other team members when she missed due to her medical leave.

28. Linda Yarbrough and multiple other team members, on multiple occasions overheard a group leader and team leaders discuss getting rid of employees who were using medical leave.

29. Defendant terminated Linda Yarbrough's employment in March 2018.

30. Defendant provided no reason for Plaintiff Yarbrough's termination from employment.

31. On or about September 24, 2018, Plaintiff received a "right to sue" letter from the Equal Employment Opportunity Commission authorizing claims under the ADA.

## COUNT I

32. At all times relevant hereto, Plaintiff Yarbrough was an otherwise qualified individual with a disability as defined by the KCRA.

33. Defendant violated the KCRA and discriminated against Plaintiff Yarbrough by terminating Linda Yarbrough for reasons related to her disability.

34. Defendant failed to reasonably accommodate Plaintiff Yarbrough, including but not limited to, interfering with her medical leave.

35. Defendant failed to engage in the interactive process to reasonably accommodate Plaintiff Yarbrough.

36. As a result of the above-described violations, Plaintiff Yarbrough is entitled to actual damages, including but not limited to backpay, frontpay, emotional distress, humiliation and mental anguish, and his attorney's fees.

## COUNT II

37. Defendant retaliated against Plaintiff Yardbrough in violation of the KCRA for exercising her protected right to seek reasonable accommodation, including but not limited to a leave of absence for her impairment(s) and because she opposed their unlawful practice of discriminating against individuals with disabilities who utilized medical leave as described herein.

38. As a result of the above-described violations, Plaintiff Yarbrough is entitled to actual damages, including but not limited to backpay, frontpay, emotional distress, humiliation and mental anguish, and his attorney's fees.

## COUNT III

39. Defendant's conduct as described herein amounted to a false representation or concealment of material facts or at least was calculated to convey the impression that circumstances were in a particular state that was inconsistent with Defendant's subsequently asserted position which was that it would not accommodate Plaintiff Yarbrough and/or not permit her continued use of intermittent medical leave.

40. Defendant in and/or through its conduct as described herein intended or reasonably expected its conduct to influence Plaintiff Yarbrough to act and ensure her absences were reported.

41. At times relevant hereto Defendants had actual or constructive knowledge of the true facts or its subsequent position regarding Plaintiff Yarbrough's request for reasonable accommodation and/or request for intermittent leave of absence.

42. Plaintiff Yarbrough lacked knowledge and/or the means of knowledge of the fact that Defendant intended to subject her to an adverse employment action.

43. Plaintiff Yarbrough relied in good faith upon Defendant's representation(s), conduct and/or words that, Plaintiff Yarbrough would be offered reasonable accommodation and/or allowed to continue her intermittent medical leave.

44. As a result of the above-stated reliance, Plaintiff Yarbrough suffered a detrimental change in position that she suffered an adverse employment action.

45. Defendant is estopped from denying Plaintiff Yarbrough reasonable accommodation and/or approving her intermittent leave of absence.

46. Defendant is estopped from arguing and/or alleging that Plaintiff Yarbrough is not otherwise qualified with or without reasonable accommodation.

## COUNT IV

47. Defendant unlawfully violated the FMLA and interfered with Plaintiff's FMLA rights including but not limited to, by subjecting Linda Yarbrough to an adverse employment action and/or termination from employment with Defendant, due to use of medical leave.

48. As a result of the unlawful acts of Defendant, Plaintiff Yarbrough has suffered FMLA damages, including but not limited to lost wages, salary, employment benefits and any and all other compensation denied or lost and interest at the prevailing rate.

## COUNT V

49. Defendant discriminated against Plaintiff Yarbrough for exercising her rights under the FMLA by subjecting her to an adverse employment action related to her medical leave.

50. As a result of the above-referenced discrimination, Plaintiff Yarbrough is entitled to damages, including but not limited to any wages, salary, employment benefits, and/or other compensation denied or lost and interest at the prevailing rate.

## COUNT VI

51. The actions of Defendant, including but not limited to those described herein, were not in good faith.

52. Defendant lacked reasonable grounds for believing that its actions, including but not limited to those described herein, were not in violation of the FMLA.

53. As a result, Plaintiff Yarbrough, is entitled to liquidated damages equal to the sum of any wages, salary, employment benefits, or other compensation denied or lost and interest at the prevailing rate.

## COUNT VII

54. Defendant violated the ADA and discriminated against Plaintiff Yarbrough based on her disability, including but not limited to taking adverse employment action against her based on her disability as evidenced by her need for medical leave.

55. Defendant failed to reasonably accommodate Plaintiff Yarbrough.

56. Defendant failed to engage in the interactive process to reasonably accommodate Plaintiff Yarbrough.

57. Defendant retaliated against Plaintiff Yarbrough in violation of the ADA for exercising her protected right to seek reasonable accommodation.

58. Defendant retaliated against Plaintiff Yarbrough in violation of the ADA because she opposed its unlawful practice of discriminating against her as described herein.

59. As a result of the above-described violations, Plaintiff Yarbrough is entitled to actual damages, including but not limited to backpay, frontpay, emotional distress, humiliation and mental anguish, and his attorney's fees.

60. As a result of the above-described violations, Plaintiff Yarbrough is entitled to punitive damages.

## COUNT X

61. As a result of the unlawful acts of the Defendant, Plaintiff Yarbrough has incurred attorney's fees and costs.

## VERIFICATION

Linda Yardbrough, Plaintiff herein, bring first duly sworn and cautioned, states that she has read the foregoing Complaint and it is true and accurate to the best of her knowledge.

*Linda Yardbrough*
LINDA YARDBROUGH

STATE OF KENTUCKY
COUNTY OF Fayette

Subscribed and sworn to before me this 1 day of November 2018.

Notary Public, State at Large No. 525332

My Commission expires: January 19, 2019

WHEREFORE, the Plaintiff, Linda Yardbrough, demands:

1. Judgment against Defendant for compensatory and actual damages,

2. Interest on the amount awarded for compensatory and actual damages,

3. Liquidated damages equal to the sum of the amount of compensatory and actual damages and the interest on the amount of compensatory and actual damages,

4. Punitive damages

5. Attorney fees and costs of litigation,

6. Judgment against Defendants for appropriate equitable or other relief, including any other relief tailored to the harm suffered,

7. A trial by jury,

8. Judgment against Defendants for court costs herein expended, and

9. Any and all other relief to which she may appear to be entitled.

Respectfully submitted,

By: /s/ Jason Thompson
JASON D. THOMPSON, ESQ.
ROSENBAUM & THOMPSON PLLC
201 West Short Street, 300B
Lexington, KY 40507
859-259-1321
859-259-1324 (fax)
jt@rtkylaw.com
ATTORNEYS FOR PLAINTIFF